| 17 | 439 |
| e109 | 162 |

EDWARD HOUTS

v.

SUSAN HOUTS.

BILL FOR SEPARATE MAINTENANCE.—While separate maintenance, provided by statute, should in no case be withheld from a wife who lives separate and apart from her husband without her fault, she must be held to a reasonable compliance with the rule requiring every complainant to make out his case by a preponderance of evidence. The court is of opinion that the wife in this cause fails to make out her case.

Error to the Circuit Court of Wabash county; the Hon. Wm. C. Jones, Judge, presiding. Opinion filed December 14, 1885.

On the 8th day of April, 1885, defendant in error filed her bill in the Circuit Court of Wabash county against the plaintiff in error for separate maintenance.

In her bill she alleges that she was married to the defendant on the 18th day of January, 1883; that she has one child, the fruit of said marriage. She charges that on the 1st day of March, 1885, without any fault on her part, the defendant willfully deserted her, and from that time to the filing of her bill continued to desert and abandon her and her said child, leaving them without any means of support.

The defendant in his answer denies the desertion and avers that the complainant refused to live with him, and on the said 1st day of March, 1885, willfully and without cause abandoned and deserted him.

Messrs. Bell & Green and Mr. M. F. Hoskinson, for plaintiff in error.

Mr. S. Z. Landers, for defendant in error.

Wilkin, J. The single question presented by this record is whether or not the decree rendered by the court below was authorized by the proof. The only wrongful act or misconduct on the part of the plaintiff in error complained of in the bill is desertion. There is some evidence in the record tending to prove cruelty on the part of the husband toward the wife, but if that was relied upon as a justification for living separate and apart from him, in conformity to well established rules of chancery practice she should have alleged it in her bill. However, that evidence and the argument based upon it may be disposed of by simply saying that there is nothing in the proof to show when these acts were committed, and it may be fairly gathered from the entire record that the parties continued to live together long after they were committed.

It is certainly not claimed that she left him on that account, because she says in her bill, and maintains in her testimony that her husband deserted and abandoned her, and that she is living apart from him because he refuses to live with her. The only question then to be determined is whether or not the complainant has supported her allegation of desertion by sufficient proof to entitle her to a decree. She testifies that he went away the 1st of March, 1885, and says, "I do not know why he left. When he left he went to Robert Willey's. I think he then went to Lawrence county. I did not see him after he went to Willey's." On cross-examination she states that he told her "that he had rented rooms at Willey's to live in, and that they were the only ones he could get." She says "he did not request me to go there to live because Mrs. Willey had sent me word that she would not allow me to come into her house. The reason he got the rooms at Willey's was, we had rented of Lucas only till the water went down, and she told us several times she wanted possession." It therefore appears from her own evidence that she did know why he left the Lucas house, and from what he told her why he got rooms at Willey's.

The defendant testified, as to the separation, that Mrs. Lucas wanted her rooms and required him to move out, and that the only rooms he could get were those at Willey's; that he only rented them until the roads got better, so that he could go back to his farm. He says that he asked his wife several times to go with him, and that she refused. That on the morning he moved, Mr. Willey and Mrs. Lucas both asked her to go with him and she refused because Mrs. Willey was mad at her.

If the husband found it necessary, or even desirable, to change his place of living, and provided another home for himself and family, reasonably suitable to his circumstances in life, it was unquestionably the duty of his wife to accompany him, and under ordinary circumstances a formal invitation to do so would scarcely be expected by the wife, or thought necessary by the husband.

Mrs. Lucas, William Lucas and Robert Willey all cor-

roborate the husband, and each swear that on the morning he moved he asked his wife several times to go with him and she refused. They also testify that they each asked her to go with him and she would not, giving as a reason that Mrs. Willey was mad at her. Mr. Willey says that he told her "that made no difference and that there would be no trouble."

Mrs. Lucas also testified, and complainant did not deny it, that previous to the moving on the 1st of March, defendant in error had sent away a portion of her things. She says "her father was there with a wagon, and she had a lot of things packed in a basket and asked me to put it in the wagon so that Ed would not see it. I gave the basket to my husband, and he put it in the wagon."

The clear preponderance of the evidence is, that instead of the plaintiff in error deserting his wife, she, in fact, did refuse to go with him to the rooms which he had provided for their temporary home, which, so far as appears from the evidence, were suitable and sufficient for their temporary comfort and convenience; that her only excuse for not going was that Mrs. Willey was mad at her. The purpose of the husband being not to take her into the family of Mr. Willey, but into separate rooms, to be occupied by them as a home of their own, having been previously informed by her husband that he could get no other rooms, and being assured by Mr. Willey that his wife being mad at her should make no difference, her excuse has rather the appearance of captiousness than a reasonable objection honestly made. There is also some testimony to the effect that she had previously declared her purpose to leave her husband and go with her parents to Texas. While it is true that she contradicts the witnesses who so testify, yet in view of the uncontradicted statement of Mrs. Lucas as to her having sent away a portion of her things and expressed a desire to conceal the fact from her husband, the evidence is entitled to no little weight as tending to prove that her refusal to go with her husband was not, in fact, because of the ill will of Mrs. Willey, but that the necessary removal was taken advantage of to carry out her previously formed design to leave him and return to her parents.

Houts v. Houts.

We have not overlooked the conduct of plaintiff in error in hastily leaving the county after the separation, and his seeming indifference as to the welfare of his wife and child, and do not hold him faultless in that respect.

The wife, however, seems to have been equally unconcerned as to a reconciliation between herself and husband, but hastened to file her bill within less than a month and a half after the separation. We recognize the superior opportunity of the trial court to judge of the credibility of witnesses, and the weight to be given to the testimony of those who appear before it and testify, and admit the wisdom of the rule which requires appellate courts to leave the finding of facts undisturbed unless it appears that such finding is manifestly contrary to the evidence; but in this case the evidence seems to be so clearly against the defendant in error that we think the decree in her favor was error. Families should not be broken up on account of trifling differences between husbands and their wives. The public is interested in the stability of the domestic relations. As the facility for obtaining decrees for divorce and separate maintenance increases, the spirit of compromise and forgiveness in the home decreases, and while the remedy provided by this salutary statute should in no case be withheld from a wife who lives separate and apart from her husband without her fault, she must be held to a reasonable compliance with the rule requiring every complainant to make out his or her case by a preponderance of the proof. Failing to do so in this case the decree in her favor must be reversed.

Reversed and remanded.