Ross v. Ross.

---

## Moses Ross v. Mercy Ross.

1. HUSBAND AND WIFE—*Conduct Justifying a Wife in Living Apart from Her Husband.*—A wife who is not herself in fault is not bound to live and cohabit with her husband if his conduct is such as to directly endanger her life, person or health, nor where the husband pursues a persistent, unjustifiable and wrongful course of conduct toward her which will necessarily and inevitably render her life miserable, and living with him as a wife unendurable.

2. SAME—*Law Does Not Encourage Their Living Apart.*—No encouragement can be given to the living apart of husband and wife. The law and the good of society alike forbid it.

3. SAME—*Trivial Difficulties Will Not Justify Separation.*—Incompatibility of disposition, occasional ebullitions of passion, trivial difficulties, or slight moral obliquities, will not justify separation.

4.  APPELLATE COURT PRACTICE—*Where Trial Court's Findings of Facts Will be Reversed.*—Where the evidence is clearly against the party in whose favor the decree of the trial court was rendered, the decree will be reversed.

Bill for Separate Maintenance.—Appeal from the Circuit Court of Fulton County; the Hon. JOHN J. GLENN, Judge presiding. Heard in this court at the May term, 1903. Reversed and remanded. Opinion filed August 28, 1903.

THOMAS & ROBISON, attorneys for appellant.

H. W. MASTERS & SON, attorneys for appellee.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is a suit by the appellee, Mercy Ross, against appellant, Moses Ross, for separate maintenance. The bill was filed to the September term, 1902, of the Fulton County Circuit Court. It alleges that the parties were married in March, 1900, and lived together as husband and wife until a short time prior to the filing of said bill; that shortly after the said marriage the appellant began a course of unkind treatment toward the appellee; that he called her vile names; that he used coarse, vulgar, profane and obscene language toward and concerning her; that he abused and mistreated her; locked her out of the house; failed and refused to provide her with the necessities of life, or with any medical care or attention, she being aged, sick and feeble at the time; that he caused and prompted his daughter to commit acts of physical violence upon the appellee, and used vile and profane language toward her; that by reason thereof the appellee was compelled to leave the appellant and depend upon the charity of strangers; that she was living separate and apart from him without her fault, and prayed that the appellant might be decreed to pay her a reasonable sum for her care and support; that she might have separate maintenance, etc.

Appellant filed an answer thereto, denying specifically each and every of the material allegations in the bill; denying that the complainant was living separate and

apart from him without her fault, and alleging in said answer that the complainant was living apart from him wholly by reason of her own fault; that he was ready and willing for her to come back at any time, and to provide her with all the necessaries of life.

At the September term the cause was continued. Shortly thereafter the complainant returned to the defendant and lived with him for a week or thereabouts, and then left him again and filed this bill.

At the January term, 1903, the cause was heard before the court without a jury, and a decree for separate maintenance entered allowing complainant $12 monthly from the date of the filing of the bill.

The principal ground relied upon for a reversal of the decree is that it is contrary to the evidence.

In the case of Johnson v. Johnson, 125 Ill. 510, the court say :

" A wife who is not herself in fault is not bound to live and cohabit with her husband if his conduct is such as to directly endanger her life, person or health, nor where the husband pursues a persistent, unjustifiable and wrongful course of conduct toward her which will necessarily and inevitably render her life miserable, and living with him as his wife, unendurable."

Appellee admits that appellant never used physical violence toward her, but bases her right to the decree upon the following allegations of her bill:     That he has failed and refused to provide her with the necessities of life, or with medical attention during her illness; that he prompted his daughter to commit acts of physical violence and to use vile and profane language toward her; that on one occasion he locked her out of the house; and that he used vulgar, profane and abusive language toward her.     The evidence discloses that the parties were married March, 1900.     That appellee was at the time past seventy, while appellant was under fifty years of age.     Appellant had been married once, and appellee four times, before. Appellant had a daughter by his former wife, aged about fourteen years, who lived with them after their marriage.

At the time of her marriage to appellant, appellee was the
owner of a house and lot, which would rent for about $8
per month, which she afterward deeded to appellant,
reserving to herself a life estate therein.    During the time
they lived together they occupied the same.    She also
owned property in Colorado, from which she derived a
monthly income of $10.50.    Appellant was a sober, indus-
trious man, depending upon his daily labor for the support
of himself and family.    During the first year of their mar-
ried life, the parties lived harmoniously together.    On
October 11, 1901, appellee suffered a stroke of paralysis,
and in 1902, still another stroke, from the effects of which
she was afterward confined to her bed for a portion of the
time, and became nervous, irritable and at times hysterical.

Appellee testified that while appellant always provided
sugar, flour and vegetables for the household, he failed to
provide meat, and that when she wanted it, she was com-
pelled to buy it with her own money; that he would not
employ Dr. Strode, the physician of her choice, to attend
her during her illness, but insisted upon employing Dr.
Davis, whom she did not like.

Appellant testified that he at all times furnished meat
for the household, either from hogs he raised and fat-
tened, or by purchase from others, and that he frequently
bought fresh meat.

Dr. Strode testified that he had been attending appellee
since her first stroke of paralysis in 1901, and that she was
still under his treatment, and that he had never presented
his bill therefor to either appellant or appellee.    Appellee
further testified that on one occasion, the daughter of
appellant pulled her down upon the stove, whereby she
was severely bruised and suffered great pain; that when
appellant was informed of it, he failed to reprimand the
daughter; said appellee " ought to know better than to
fall in contact with that girl," and laughed, all of which
appellant, his daughter, and the mother of the appellant,
who was present, expressly deny, the daughter and mother
testifying that appellee fell against the stove, while the

Ross v. Ross.

daughter was resisting an attempt on the part of appellee to strike her and drive her out of the house. The only competent proof tending to sustain the charge that appellant locked appellee out of the house, is that of Jacob Genglin, who testified that she came to his house one night, crying, and that he took her back home; that when she rapped on the door, appellant said with an oath, "When you come in here, keep your mouth shut," or words to that effect. There is no evidence, other than her own statements to Genglin, that she was locked out of the house, or that she was not allowed to enter when she returned. Appellant admits that he made some such statement as above quoted, but claims that it was addressed to Genglin and not to appellee, and denies that he used an oath. He further testified that on the night in question he reproved her for telling around that his brother was in jail, and that a quarrel ensued which resulted in appellee's leaving the house of her own accord; that she afterward returned accompanied by Genglin and shortly afterward went to bed. Appellee's testimony as to the use of vulgar, profane and abusive language by appellant toward her is substantially as follows: "He would call me liars, sons of bitches and fool. I said to him, 'Moses, you are killing me by inches.' He says, 'You can't kill the devil, you are the devil and you can't kill the devil.' I told him I was feeling bad and not to make so much noise. He called me 'an old fool,' one night. He said, 'That is the way with old fools;' told me I was a devil and couldn't be killed, and all that."

Barbara Barton, called for appellee, and who lived in the family all one winter when appellee was sick, testified that appellant and appellee quarreled a good deal over one thing or another. That she never heard appellant use vulgar or profane language, just the words "devil" and "crazy."

Mrs. Genglin testified that she heard a quarrel between appellant and appellee, during which appellee said she didn't care for a divorce, and that if appellant wanted one he could get one, and that appellant replied that "she

would marry a dog." Appellant admitted that he used this and some other of the language attributed to him, but denied that he ever used profane language toward her. He claims that the language used was under great provocation resulting from her continual scolding and complaining. It is apparent that the disparity in ages of the parties, the nervous and sometimes hysterical condition of appellee resulting from her advanced age and afflictions, together with the presence of her step-daughter in the family, led to frequent quarrels between the parties, during which appellant may have used the language attributed to him, but we do not believe, upon careful consideration of the entire record, that appellee has established such a case as would warrant the decree granted. We are unable to say that the conduct of appellant, as shown by the evidence, was such as to necessarily and inevitably render the life of appellee miserable and living with appellant as his wife unendurable. "No encouragement can be given to the living apart of husband and wife. The law and the good of society alike forbid it." (Johnson v. Johnson, *supra*.) "Incompatibility of disposition, occasional ebullitions of passion, trivial difficulties, or slight moral obliquities, will not justify separation." Hunter v. Hunter, 7 Ill. App. 253; Johnson v. Johnson, 125 Ill. 510.

In Houts v. Houts, 17 Ill. App. 439, the Appellate Court in its opinion used the following language, which we think applicable to the case at bar:

"We recognize the superior opportunity of the trial court to judge of the credibility of witnesses, and the weight to be given to the testimony of those who appear before it to testify, and admit the wisdom of the rule which requires appellate courts to leave the finding of facts undisturbed unless it appears that such finding is manifestly contrary to evidence; but in this case the evidence seems to be so clearly against the defendant in error that we think the decree in her favor was error. Families should not be broken up on account of trifling differences between husbands and their wives. The public is interested in the stability of the domestic relations. As the facility for obtaining decrees for divorce and separate maintenance

increases, the spirit of compromise and forgiveness in the home decreases; and while the remedy provided by this salutary statute should in no case be withheld from a wife who lives separate and apart from her husband without her fault, she must be held to a reasonable compliance with the rule requiring every complainant to make out his or her case by a preponderance of proof. Failing to do so in this case the decree in her favor must be reversed."

For the reasons indicated, the decree will be reversed and remanded, with directions to the Circuit Court to dismiss the bill for want of equity.