## Charles L. Will v. Lillian Will.

### Gen. No. 13,088.

SEPARATE MAINTENANCE—*what essential to relief in proceeding for.* A decree will not be entered upon a bill praying for separate maintenance, unless it appears that at the time of the filing thereof the complainant was living separate and apart from the defendant.

Separate maintenance proceeding. Error to the Superior Court of Cook county; the Hon. JESSE HOLDOM, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1906. Reversed and remanded. Opinion filed May 14, 1907.

Statement by the Court. This writ of error is prosecuted from a decree entered in the Superior Court granting the defendant in error separate maintenance

in the sum of $65 per month, and the control of her son.

The bill filed by complainant below avers the marriage of herself and defendant occurred on March 20, 1890, and that they lived together as husband and wife until about November 25, 1904, since which date the defendant has refused to live and cohabit with the complainant, and that they are living separate and apart at the time of the filing of the bill and that a child, then four years and eight months old, was born to them; that a friendship sprang up between defendant and Emily S. Wallace, a nurse who attended upon complainant in error in her sickness; that they became in love with each other and that defendant committed adultery with Miss Wallace in Omaha, Nebraska, in the early part of the year 1903 and in Chicago in 1904; that since defendant became infatuated with said Wallace he has treated complainant with very little consideration; that said Wallace lived in their home for several years except when she was temporarily absent at intervals, until January 11, 1905; that defendant ceased his marital relations with complainant in November, 1904, and has persisted in such cessation until the present time; that in January, 1905, complainant sent said Wallace away from their home, and that she thereupon made her home with the parents of plaintiff in error in an apartment in the same building where defendant spends all his time except when at business; that defendant now only furnishes complainant with a place to live, but with no money or clothing for herself or son; that she is without means to support herself and son or to prosecute this suit.

The bill then alleges that defendant receives a salary of $150 per month; that she fears that as soon as he learns of the institution of this suit he will do her great bodily harm unless restrained by injunction; that defendant has lately threatened to leave this state and go where complainant will be unable to obtain any relief against him, and prays for separate maintenance for herself and son and for an allowance of money with

which to prosecute this suit and for a *ne exeat republica* and an injunction.

The Superior Court ordered the injunction and the *ne exeat* to issue.

The answer of defendant was filed March 30, 1905. It admits the marriage and alleges that complainant and defendant lived together as husband and wife from their marriage until January 10, 1905, and that he at all times treated complainant as a loving and affectionate husband; denies that he refused to live and cohabit with her, and alleges that complainant deserted him without cause; denies that she performed the duties and demeaned herself as a loving and affectionate wife; admits that they are now living apart and asserts that it is wholly the fault of complainant; admits that one child was born to them and alleges the name of the child is Howard Wallace Will, the middle name, Wallace, having been given to the child at the request of complainant in evidence of her regard for Miss Wallace; denies he ever committed adultery with Miss Wallace; alleges that she was a trained nurse and entered his family in 1898 in that capacity, and nursed and cared for complainant during a long illness and at the same time managed the household affairs for complainant, and so endeared herself to complainant that upon recovering from her illness complainant besought said Wallace to make her home with her as a member of her family except as she might be engaged in her professional duties, and that defendant consented thereto, and said Wallace resided in their family until January 10, 1905, and was treated as a member of the family; denies all acts of familiarity with Wallace averred in the bill; alleges that at the time the bill was filed complainant and defendant occupied a comfortable flat for which defendant paid the rent; that the flat was luxuriously furnished and defendant provided a horse and carriage for the family use and provided liberally for complainant's clothing and for every wish and desire to the best of his ability, and in so doing became indebted to the extent of $3,000;

that defendant took out policies of insurance on his life in two companies, payable to complainant in the event of his death, thereby seeking to provide for complainant in 'the event of his death; that at the time of filing his answer he is without property or estate; that prior to the institution of this suit he was in receipt of a salary of $150 per month, but that he has been discharged on account of these proceedings, and that complainant has broken up the home provided for her and has removed and secreted all the furniture and compelled defendant to surrender his, said life insurance, and the cancellation value thereof has been sequestered under order of this court for the benefit of complainant.

Upon the hearing the court entered a decree finding that the allegations of the bill charging that defendant committed adultery with Emily S. Wallace are not sustained by the proofs; that complainant and defendant are living separate and apart without fault of the complainant, but on account of the fault of the defendant, and decrees that the complainant is entitled to separate maintenance from the defendant, and orders defendant to pay complainant $65 per month, and that the money impounded with the clerk of the court in this cause be used for the payments of said monthly allowance until said moneys are exhausted, and that defendant thereafter make such payments, and gives the custody and care of the child to the complainant.

JOSEPH W. LATIMER, for plaintiff in error; BENJAMIN T. ROODHOUSE, of counsel.

ARND & ARND, for defendant in error.

MR. JUSTICE SMITH delivered the opinion of the court.

The testimony of complainant below, defendant in error, upon the vital question presented by this bill as a basis for the decree prayed for, is as follows: that the marital relations between her and her husband

Will v. Will.

ceased November 28, 1904. "Q. What was the cause of the cessation of these relations; what was said between you—your husband and yourself? A. Nothing; he did not say anything that I know of, nor I. Q. Well, who caused the cessation of these relations? A. Neither of us, I guess, unless it was Mr. Will. Nothing was said or done. We had our room together and slept in the same bed, and continued to occupy the same bed until about the 25th of January, 1905. Miss Wallace left about the middle of January, 1905. My husband and I did not hold any conversation after the night she left in January. He did not speak to me after that. Well I prepared the meals and tried to do right as a wife, but he had nothing to say after that."

After describing what took place between them regarding the sending away of Miss Wallace's trunk the complainant testified: "I remained in my apartment. He was in the front chamber and he leaves it to me. I did not eat with him; he went up-stairs with his mother. I paid the grocery bill with his money. I have not lived in the apartment since March of this year. He left me and went up and took his meals with his mother, then he would come down and get up and fix his bed and go out, and I never saw him since. I am living with my mother. My furniture is in storage. I got his meals and called him to come down and eat with us and he said no he would not. He was taking his meals with his mother two or three weeks, I guess, before I left the apartment. I was living at home with my son when the suit was started and left the apartment afterwards. Mr. Will furnished me five dollars a week to run the house. Every Tuesday I got five dollars."

On cross-examination she testified: "I first went to see Mr. Arnd (her solicitor) in January, 1905. My husband was then sleeping at home every day. My husband was then sleeping there at the apartment after this bill was filed. He left me money on his dresser twice, I guess. The bill was sworn to February 7th and filed February 8th. I was also buying groceries in a

store on a bill at that time and they were duly paid for by my husband.''

Complainant then relates a conversation with her husband one afternoon when he came home, as follows: ''I told him I wanted a little money to get my boy some night clothes. I said I was going to get them charged at Field's, but I thought I had not better, and he gave me two dollars to get them. I said 'Now, Charlie, won't you try and do right by me for the sake of our boy?' And he says, 'I cannot. I have thought it all over for a long time and I cannot forgive you for going and telling your friends about Miss Wallace and I and running us down.' I says, 'What do you want me to do?' He says, 'We will settle this thing in a quiet manner. You get your lawyer and I'll get mine.' I said, 'Very well, I only wanted to know what you wished to do.' ''

Complainant fixes the time of the above conversation as the last part of January or the first of February about the time the bill was filed. She admitted in her testimony that she had not made any effort to get him to come back to the house, saying she had not seen him at all since she left the house; that the day they went into court defendant asked her if she would come back to him and she replied she would let the law take its course. She also admitted meeting him once since then and trying to avoid him, and that he asked her again to come back to him, but she refused; and further, when they went to the apartment to divide the furniture defendant called her out into the kitchen and asked her if she would not be willing to remain in the house and she did not remember her response to him.

We have above set forth all the evidence in the record offered on behalf of the complainant to sustain the averment of her bill that the defendant had failed or refused to discharge the common law duty of a husband to furnish support and maintenance for his wife suitable to the condition of the parties in life, where she is living separate and apart from him without her fault. We have not set out the substance of the evidence as

to the relations of the defendant, plaintiff in error, with Miss Wallace, because this is a bill for separate maintenance, not a bill for divorce on the ground of adultery, and that evidence is not material to the question upon which the bill is necessarily founded.

It is insisted on behalf of defendant in error that the question whether the complainant and defendant were living separate and apart at the time the bill of complaint was filed was never an issue in the case for the reason that the answer avers that the parties "resided together as husband and wife from the date of said marriage until the 10th day of January, 1905," and "this defendant Charles L. Will admits that the defendant and said complainant, Lillian Will, are now living separate and apart from each other, and this defendant avers and alleges that said complainant, Lillian Will, is wholly at fault in the matter of said separation." And it is contended that this statement in the answer refers to the allegation in the bill of complaint that the parties are living separate and apart at the time of the filing of the bill.

An examination of the answer shows, however, that the above quoted allegation of the answer has reference to the time of the preparation and filing of the answer. In a subsequent paragraph of the answer it is stated that "at the time said complainant filed her bill of complaint in this cause the said complainant and this defendant occupied and resided in a comfortable steam heated flat in a respectable neighborhood; that this defendant paid a monthly rental for said flat of forty-five dollars; that said flat occupied by this defendant and the said complainant was furnished luxuriously by the defendant with all the necessary provisions, furniture and other conveniences of housekeeping."

In view of these allegations and the evidence offered by defendant on the hearing and the cross-examination of complainant on this point, we think that the contention is without good foundation in the record.

Considering the evidence of complainant alone and by itself, and wholly without reference to the evidence

offered on behalf of defendant, it is apparent that complainant was not living separate and apart from the defendant when she filed her bill. There is nothing in her testimony, giving to it the most favorable construction and indulging in all reasonable inferences favorable to complainant's case, which tends to support the averments of her bill in regard to this essential fact to the complainant's right to the relief prayed. On the contrary she says in her testimony that they were living together in the apartment at the time of the filing of the bill and afterwards, and he was paying the rent and the grocery bills, and gave her five dollars a week in addition, with which to run the house. Complainant does not say that she asked defendant for necessary money and was refused, or that the allowance made to her was insufficient, or that defendant had refused to suitably provide for her in their home in any way.

It thus clearly appears from complainant's testimony that when she filed her bill of complaint defendant was providing her a home which had been deemed by them to be a suitable one for them to live in, and she was living in it, undisturbed by defendant, and he was paying all bills that were being incurred without objection or complaint. We cannot see what more a decree in her favor could give her.

The statute under which this bill was filed provides: "That married women, who, without their fault, now live or hereafter may live separate and apart from their husbands, may have their remedy in equity," etc. In Ross v. Ross, 69 Ill. 569, Mr. Justice McAllister, after referring to the common law duty of the husband to provide the wife with necessaries suitable to their condition in life, and the inadequacy of the common law remedy, says at page 572: "The object of the statute is apparent on its face. It is to confer jurisdiction upon the court of equity to enforce the common law duty of the husband to furnish support and maintenance for the wife suitable to the condition of the parties in life, upon her application, in all cases where

she is living separate and apart from him without her fault, or, in other words, under such circumstances as would enable her to avail herself of the common law remedy of obtaining such support upon the credit of her husband.''

The complainant was not living separate and apart from the defendant as provided by the statute, and he was providing her with support and maintenance suitable to their condition in life. She, therefore, under the facts shown by her own testimony, was not clothed with any common law right of action or remedy against him, and she cannot maintain this bill. Johnson v. Johnson, 125 Ill. 510; Klemme v. Klemme, 37 Ill. App. 54; Earle v. Earle, 60 Ill. App. 371.

The view we take of the main question in the case makes it unnecessary for us to consider or discuss the other questions presented in the briefs.

For the reasons given the decree is reversed and the cause is remanded with directions to the Superior Court to dismiss the bill.

*Reversed and remanded with directions.*