Andrew C. Garvy, Appellant, v. Frances R. Garvy, Appellee.

Gen. No. 37,998.

486

Opinion filed November 20, 1935. Rehearing denied December 4, 1935.

PACKARD, BARNES, McCAUGHEY & SCHUMACHER, of Chicago, for appellant; RUSSELL J. McCAUGHEY, of counsel.

CHARLES J. TRAINOR, of Chicago, for appellee.

MR. JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

This is an appeal from a decree of the circuit court dismissing the bill of divorce of the plaintiff Andrew

C. Garvy for want of equity and granting to defendant and cross plaintiff Frances R. Garvy her prayer for separate maintenance on her cross-bill. The bill asked for relief on the ground of desertion for one year and the cross-bill asked for relief on the statutory ground that she was living separate and apart without fault on her part.

The evidence shows that the plaintiff in the original bill for divorce was a doctor residing at 6000 Sheridan Road, Chicago, Illinois. At the time of his marriage with the defendant in 1924, he was the father of 10 children, ranging from 6 to 20 years of age who resided with him. His first wife died about four years previous to his second marriage. Andrew C. Garvy, plaintiff, and Frances R. Garvy, defendant, lived together until July, 1932, when she left their home and did not return thereto until November 1, 1933.

The evidence shows that both of the parties to this suit are middle aged people, being upwards of 50 years. The real cause of the dissension between them is not very clear. Plaintiff says that his wife neglected the household and care of the children, quarreling with some of them at times, and lack of affection. Defendant claims lack of affection and regard and states that she was compelled to work at the household work and that there was too much for her to do; that she never had a vacation or rest; that the children were annoying and made fun of her.

On the date of the wife's departure there had been an altercation between the plaintiff and defendant, at which time defendant's eyeglasses were broken, she saying that plaintiff struck her, and plaintiff saying that defendant was making a great deal of noise, calling him a coward, etc., and that he merely raised his hand to prevent her from making such a disturbance as to attract the attention of the neighbors. Thereafter the two lived separate and apart, evidently by

mutual agreement as he commenced paying her $12 per week for support and maintenance. The next conference between them was just prior to Thanksgiving Day, 1932, when the cross complainant went to the office of the plaintiff about 8:30 o'clock in the evening and waited until his patients had left and said that she had come to go home with him and he replied, ''Well, you can't go tonight. We are painting on the third floor, the beds up there are down and there would be no place for you to sleep. . . . He said, 'You left me or left the house,' and I said 'Well, not intentionally and not willingly staying away, you gave me occasion to leave by striking me.' '' She then asked him to drive her home and he told her she could get a cab. From this offer of reconciliation nothing resulted and the parties continued to live separate and apart.

No evidence has been offered by either side as to how the arrangements were made for the doctor to pay $12 per week for the support of his wife while living separate and apart from him. A living separate and apart to constitute desertion must be against the will of the party claiming desertion and where parties live separate and apart by mutual agreement it does not constitute desertion on the part of either and neither of said parties is entitled to a divorce on the ground of desertion. *Lyons v. Lyons*, 231 Ill. App. 568, 580.

Again on St. Valentine's Day, 1933, the defendant wrote the plaintiff stating that she desired to return and resume her place in the home, which letter is referred to as the St. Valentine's Day letter, expressing her affection and reviewing their troubles and pleading to try living together again as husband and wife. To this letter the doctor sent a reply indulging in charges that she had killed the love that once was hers and telling her that she could not come back. This condition continued until November, 1933, when she returned to her home and told him that she had come

to stay. Whereupon the plaintiff took his coat and hat and left the house and did not return until he had commenced suit for divorce and obtained an injunction restraining the defendant from occupying the premises, whereupon in obedience to said court order, the defendant left their home.

In reading this record it is easy to see that both are to blame in this controversy. The Illinois Revised Statutes 1935, ch. 40, ¶ 1, provides that where a wife or husband "has wilfully deserted or absented himself or herself from the husband or wife, without any reasonable cause, for the space of one year; . . . it shall be lawful for the injured party to obtain a divorce and dissolution of such marriage contract." The separate maintenance statute, Illinois Revised Statutes 1935, ch. 68, ¶ 22, provides: "That married [men or] women who, without their fault, now live or hereafter may live separate and apart from their [wives or] husbands, may have their remedy in equity, in their own names respectively, against their said [wives or] husbands in the Circuit Court of the county where [the wife or] the husband resides, for a reasonable support and maintenance while they so live or have so lived separate and apart; . . ."

No advantage could be had in reciting the voluminous evidence. In chancery cases, where the evidence is conflicting and heard in open court, the error in finding as to fact should be clear and palpable to authorize a reversal. *Elmstedt v. Nicholson*, 186 Ill. 580, 584. We realize that a reviewing court would have no right to disturb the findings of the chancellor who has heard the witnesses in open court and has seen them upon the witness stand, unless it can be said that the finding of the trial court is manifestly against the weight of the evidence. A review of the evidence in this case shows an effort on the part of each of the

principals to blame the other for a condition which both helped to create.

Desertion in this State must, as the statute provides, be for the period of one year and must be wilful and without reasonable cause. The incident in the home when defendant's eyeglasses were broken by the plaintiff is claimed in the defendant's brief to have been her reason for leaving. On this subject the defendant says: "I can truthfully say when I went out of the house with my brother I had no intention of remaining away. The fact the doctor struck me is *not* the reason I left the house. In a way it was, I had no intention of going away to dinner." And again, the defendant says: "The reason I left was that the doctor did strike me. I didn't intentionally leave. The question why I left is pretty hard to answer. . . . I didn't have much desire to see him at all, he had plenty of chances to apologize but didn't do so."

To justify desertion—that is the wife or husband leaving the other—a mere indignity suffered is not sufficient reason, but there must be such conduct upon the part of the offending one as to make the maintenance of the marriage relation practically impossible.

It is quite plain from the evidence that the plaintiff was quite willing to grasp this opportunity to be separated from his wife, realizing either from his own knowledge or from legal advice, that the wilful abandonment by the wife for a period of one year without reasonable cause would be a ground for divorce. It is quite apparent that this thought entered his mind immediately after the departure of his wife for as witness Gould, his neighbor, stated when on the witness stand: "The doctor came over and told me that he had had some sort of fuss with Frances, and that she was no longer at his house, and that he would like to have me see a lawyer . . . The doctor said he never

wanted to see her again . . . I have tried to be a go-between between both of them and got both of them sore at me.'' This conversation took place shortly after her departure. Gould further stated that he never spoke to plaintiff on a subsequent occasion about a reconciliation between plaintiff and his wife.

Much of the time during 1932 and 1933 was taken up by conferences with various clergymen looking to a reconciliation, but apparently nothing came of it.

When a wife or a husband deserts the other, and at any time within a year in good faith offers to return, if the husband or wife refuses to receive them and co-habit with them and resume the marital relation, then the husband or wife so refusing becomes the deserting party and the statute ceases to run against the husband or wife who first left the other.

The doctor's statement to the witness Gould which is uncontradicted, that he never wanted to see his wife again, outweighs any statement made by him that the door was always open and the latch string was out, etc. It was quite evident that he did not wish her to return.

The evidence of the defendant, the wife, is just as inconsistent with the good faith as that of the doctor. The law is that the offer to return to a husband by the wife must be sincere and whilst her evidence tended to convey the impression that she was a long suffering wife, yet she suffered no hardships beyond that which could be expected as the head of a large household.

In the dissolution of the marriage relation or in securing separate maintenance, the circumstances must be as the statute prescribes—without fault on her part or on his part. No one can go over this record and help but find that both the plaintiff and the defendant here have attempted to magnify trivial everyday incidents to undue proportions. Counsel for defendant insists that his client is entitled to leave her husband

because of the atmosphere which the plaintiff had created. Whilst incompatibility of temperament does not tend to establish the most harmonious home conditions, yet the record here shows that both contributed to this situation and the legislature of this State has not as yet made incompatibility of temperament a ground for divorce or a ground for separate maintenance. The public policy of the State is for the maintenance of the home and the sustaining of the marriage relation and a few insignificant differences cannot be construed as being a justification for breaking the family tie. *Johnson v. Johnson,* 125 Ill. 510. The record here shows that both are to blame.

It has been suggested by plaintiff that it would be satisfactory to him if a divorce was granted and at the same time allow alimony in favor of his wife. The function of a court is to decide the rights of litigants under the law and not attempt to exercise paternalistic care and solicitude looking to the future welfare of litigants. The suggestion cannot be entertained.

We think the trial court was right in finding that there was no cause for divorce by the plaintiff against the defendant, but we do think that an error was committed when the court found that the wife was living separate and apart without fault on her part. Protestation of love and affection, if made in good faith, and the statement that said defendant could not live without the plaintiff, if believed, entirely nullify the charges which she claims as a basis for leaving the doctor in the first place. The rule in equity that both equities being equal, the law will prevail, operates in this case and where both are to blame the law will leave them as it finds them. We cannot find that the defendant has shown by a preponderance of the evidence that she is living separate and apart without fault on her part and we are, therefore, of the opinion that the trial court erred in granting separate maintenance on the

cross-bill and, consequently, the decree of the circuit court dismissing plaintiff's bill for divorce for want of equity is hereby affirmed and the cross-bill of the defendant is hereby reversed with directions to the circuit court to dismiss the same for want of equity.

*Decree affirmed in part and reversed in part with directions.*

HALL, P. J., and HEBEL, J., concur.