Arintha Hellrung, Appellee, v. John J. Hellrung, Appellant.

334

term, 1943. Heard in this court at the October
Opinion filed October 30, 1943.
Rehearing denied February 23, 1944.

DuHadway & Suddes, of Jerseyville, for appellant.

J. P. Streuber, of Alton, for appellee.

Mr. Justice Stone delivered the opinion of the court.

This is an appeal by John J. Hellrung, defendant appellant, who will be designated in this opinion as defendant, from a decree for separate maintenance entered by the city court of Alton, October 14, 1942, in favor of Arintha Hellrung, plaintiff appellee, who will be designated in this opinion as plaintiff.

The case was tried upon an amended complaint, which charged defendant, aided by his parents and two sisters with a persistent, unjustifiable and wrongful course of conduct rendering the life of plaintiff miserable, and living with defendant unendurable, and then and there endangering the life, person and health of plaintiff, and answer, denying such allegations and charging that plaintiff was at fault.

By the decree the court found that defendant had pursued a persistent, unjustifiable and wrongful course of conduct toward plaintiff, so as to render her

life miserable and living with defendant unendurable, and decreed that she was living separate and apart from defendant without her fault, and should have separate maintenance in the sum of $40 a month, an additional sum of $10 a month for the support of their child, Tommy Hellrung, general custody of said child, the household furniture and effects delivered to her, a $500 allowance for attorney fees and payment of costs, assessed against defendant.

It is assigned as error relied upon for reversal, that the finding of the court, that plaintiff was living separate and apart from defendant without her fault, was contrary to the law and the manifest weight of the evidence, that the court further erred in awarding major custody of said child to plaintiff, in awarding her the household effects, the $500 attorney fees, and costs.

It appears from the record that plaintiff and defendant, married since 1936, with one child Tommy, aged 4 years, lived next door to the parents of defendant. Defendant was engaged in the real estate improvement and maintenance business with his sister, Frances. On his parent's premises were located a garage where he kept his work truck and a number of buildings where he kept tools and supplies for use in connection with his work.

Defendant was a member of the Catholic Church and plaintiff belonged to the Evangelical Reformed Church. Before the parties litigant were married, they signed an agreement, in view of their approaching marriage that all children born of the marriage should be baptized and educated in the Catholic faith. Three days after the child was born, without the knowledge or consent of defendant, plaintiff had Tommy baptized in the Evangelical faith. When defendant found this out, and about 10 days after Tommy was born, when plaintiff returned from the hospital, defendant gave her five days to get out of the

house. Later so she claims, he gave her another week to get out, but she did not go and he made no attempt, then or since to put her out, nor did he again order her to leave.

In February 1938, there seems to have been an altercation about a baby buggy, and plaintiff claims that she tried to keep defendant from taking the child out of the buggy and he pushed her against the wall, and slapped her face. On one occasion in May 1941, it is claimed that plaintiff tried to prevent defendant from taking Tommy on the truck with him and she was pushed against the wall. These acts, however, do not seem to have motivated plaintiff in leaving her husband.

The record indicates that Tommy spent much time at his grandparents' home next door. At times he had meals there and a few times stayed all night. He had some of his toys there, and a sand pile in the backyard where he played. His grandfather taught him from several primer books to do some reading and other things taught in kindergarten. It is claimed by plaintiff that defendant's father took the custody of Tommy for more than two and one half years, and that she in effect, was denied the custody of him.

In May 1941, defendant came home and found that the clothes of both his wife and his child were gone from the house. He found plaintiff and the boy at the Illinois Terminal station preparing to leave for St. Louis and thence to Nokomis, where the people of plaintiff resided. Thereafter when defendant left home he took Tommy with him. Plaintiff then instituted a habeas corpus proceeding in the city court of Alton, and at the hearing on June 5, 1943, the court entered an order awarding the custody of Tommy to defendant, with the right to keep the child in his control and possession and when absent from home, to place the child in the custody and possession of his grandparents, with the right on the part of plaintiff

to see the child at reasonable times, but not to remove the child from their custody.

The evening the court entered this order, plaintiff, defendant and Tommy went to the grandparents' home, where Tommy was to stay all night. There was some disagreement over plaintiff's insistence on staying there all night with the child. Plaintiff claims that defendant's father refused her permission and pushed her from the porch. She then had a nervous attack and was taken to the hospital in a hysterical condition. Plaintiff stayed in the hospital four or five days and upon her discharge therefrom went to the home of her folks in Nokomis, and has not lived with the defendant since.

No advantage could be had in reciting the voluminous evidence in this case. It appears to us, that on many occasions plaintiff attempted to magnify everyday incidents to undue proportions. She elaborates upon one incident, when she came home one evening and saw a light in the bedroom and was afraid that some one other than the family might be in the house. Defendant was there, and did not answer her, and she called the police, who went in with her. On another occasion plaintiff took Tommy and drove home to her parents, without saying anything to defendant about it, and he went up and got the car, without saying anything to plaintiff about it, and she reported it as stolen, to the police, who located it in defendant's possession.

In chancery cases, when the evidence is conflicting and heard in open court, the error in finding as to fact should be clear and palpable to authorize a reversal. *Elmstedt v. Nicholson,* 186 Ill. 580; *Garvy v. Garvy,* 282 Ill. App. 485. We realize that a reviewing court would have no right to disturb the findings of the chancellor who has heard the witnesses in open court and has seen them upon the witness stand, unless it can be said that the finding of the trial court is manifestly

against the weight of the evidence. It has been held repeatedly in Illinois that incompatibility of disposition, slight moral obliquities, occasional exhibits of passion, trivial difficulties, are not good cause for living separate and apart. *French v. French,* 302 Ill. 152; *Wahle v. Wahle,* 71 Ill. 510; *Johnson v. Johnson,* 125 Ill. 510. Good cause for living separate and apart from her husband must be such conduct on the part of the husband as will directly endanger the life of the wife, her health or person, or such a course of conduct as will necessarily and inevitably render her life miserable and living with him as his wife unendurable. *Jackman v. Jackman,* 213 Ill. App. 329; *Johnson v. Johnson, supra; French v. French, supra.*

To maintain her suit against her husband, plaintiff herein must show not only that she had good cause for living separate and apart from her husband, but also that such living apart was without fault upon her part. Such fault, within the meaning of the statute, is a voluntary consenting by her to a separation or such failure of duty or misconduct on her part as materially contributed to a disruption of the marital relation. *Decker v. Decker,* 279 Ill. 300; *Johnson v. Johnson, supra.*

We do not believe that the fact that the couple lived close to defendant's parents, even if the father and sister sought to control defendant's household, warranted a finding that plaintiff was entitled to separate maintenance. In the case of *Giese v. Giese,* 107 Ill. App. 659, the Appellate Court held that the fact that the husband against his wife's wishes suffered the mother of his former wife to control the household affairs absolutely, did not justify the wife in living separate and apart from her husband.

In the spring of 1940 plaintiff prepared that which might well be described as a marital bill of rights, which she presented to defendant and stated that unless he did the things enumerated therein, she would leave him and get a divorce. She followed this by a

supplemental demand in the spring of 1941, all of these demands running the whole gamut of marital relationship, from where and how Tommy was to pray, to the demand that all insurance be in her name; at what time defendant should take care of his business; the operation of the car; all bank accounts to be joint, and a demand that he move away from his folks. She herein indicated a complete lack of conciliation. On the witness stand she stated, ''I think I should have the exclusive say-so about Tommy's education and what church he should go to. I think that we should agree in it.'' Which was hardly indicative of a compromising state of mind. She seems to have had a peculiar attitude toward agreements. With reference to the prenuptial agreement, she claimed that she signed that contract with the understanding that it would not have to be carried out. We are of the opinion that she was not without fault.

Counsel for plaintiff say in their brief that the evidence definitely shows in this case that it is a contest between the paternal grandparents and defendant in depriving plaintiff of the companionship of her child. It would appear that this theory of the matter resulted in the case at bar being a retrial of the habeas corpus proceeding, previously instituted by plaintiff. The real issue in the case is whether plaintiff in the instant case is entitled to separate maintenance. The court is of the opinion that the finding of the trial court, that plaintiff was living separate and apart from defendant without her fault is contrary to the manifest weight of the evidence.

For the reasons above stated and there being the further question of the custody of child, attorneys' fees, and court costs involved in addition to the primary question of separate maintenance, the decree of the city court of Alton is reversed and remanded for further proceedings, not inconsistent with the views expressed in this opinion.

*Reversed and remanded.*