## William C. Mellanson v. Eva Mellanson.

### Gen. No. 4,264.

1. BRIEF—*waiver of errors by.* Errors assigned but not argued are deemed waived.

2. SEPARATE MAINTENANCE—*what entitles to.* A wife in order to obtain separate maintenance need not show a statutory ground for divorce, but it is sufficient if a persistent, unjustifiable course of conduct on the part of the husband be shown which necessarily renders the life of the wife miserable.

Proceeding for separate maintenance. Error to the Circuit Court of Kankakee County; the Hon. ROBERT W. HILSCHER, Judge, presiding. Heard in this court at the October term, 1903. Affirmed. Opinion filed March 14, 1904.

STEPHEN R. MOORE and DONOVAN & SHIELDS, for plaintiff in error.

H. K. & H. H. WHEELER, for defendant in error.

MR. JUSTICE VICKERS delivered the opinion of the court.

This is a writ of error to the Kankakee Circuit Court and brings up a decree for separate maintenance rendered at the January term, 1903, of that court in favor of Eva Mellanson against William C. Mellanson. The complainant was awarded $250 per annum, payable quarterly. The errors assigned on the record are that (1) the court erred in excluding proper evidence offered by the defendant; (2) the court erred in admission of improper evidence offered by complainant; (3) the court erred in giving a decree for the complainant.

No reference is made to the first and second assignments of error in the brief of plaintiff in error; these assignments are therefore waived. C. & A. R. R. Co. v. Am. Strawboard Co., 190 Ill. 268; Harding v. Davis, 202 Ill. 122; Cook v. Moulton, 59 App. 428; Schmitt v. Devine, 63 App. 289; Standard, etc., v. Kelly, 66 App. 267; Stockbarger v. Sain, 69 App. 43; City of Chicago v. Cook, 204 Ill. 373. The third assignment only need be considered.

Complainant and defendant below were married on the 14th day of January, 1890. A short time after their marriage they moved to Chicago where they worked in stores and supported themselves. Subsequently, they went to Manteno, where the complainant's mother lived, and the defendant was given a working interest in the business of complainant's stepfather. During this time the defendant became indebted to complainant's parents for about $900 or $1,000. In the spring of 1901, defendant left Manteno and went with complainant to Kankakee, where defendant's father resided. Here he bought a livery business from his father, giving a chattel mortgage for the entire purchase price. The defendant secured rooms for himself and wife at his father's home in Kankakee and they took their meals at a hotel. The evidence shows that the livery business yielded an income of $400 to $500 per month; that complainant assisted in keeping the books, and that she often asked her husband what the expenses of the business were, and he refused to tell her anything about his expenses, but would tell her it was none of her business, using profane and coarse language to her.

It is also shown that she often spoke to him about repaying her stepfather the debt, or some part of it, they owed him, and this also brought out angry and profane replies. The complainant finally asked defendant's father if he would not speak to her husband concerning the payment of some portion of the debt to her stepfather. The father went out and had a talk with the son, and came back to the house where complainant was and said to her, "Eva, you are too good to live with us, you get out of my house." This was followed by curses and calling the complainant foul and vulgar names. She immediately went to the hotel to meet her husband and told him that his father had put her out of the house; he said, "It is a wonder he did not put you out before." She asked her husband what he was going to do. "Nothing at all," he replied. "Are you not going to get other rooms?" she asked; "No." "Then where are you going to live?" "Right at home where I

Mellanson v. Mellanson.

have been." They then went across the street and complainant fell in a faint and became unconscious. The defendant dragged and pulled her until he got her to the door of his father's house and pushed her in the hall and said " You stay there until you get yourself a home." At this point defendant's mother seeing what had happened, said: " You are a coward; this is your work. If you had been here and heard your father speak to her as I did you would have struck him; if I had been a man I would have done so." The defendant laughingly passed out of the house saying, " I am nobody's fool." Defendant's mother put the complainant to bed and the next morning the defendant asked complainant if there was anything he could do for her, and she said " I will need some money;" he threw fifty cents on the dresser and passed out. Complainant wrote defendant a note, and asked him to nail up the boxes containing her goods and have them sent to Manteno, which he did. Complainant went to her mother at Manteno and no further communication took place between the parties.

Under the foregoing facts it is contended that the complainant is not living separate and apart from her husband without her fault and that therefore the decree in her favor is erroneous.

In order to sustain a decree for separate maintenance it is not necessary that the complainant should show that a statutory ground for divorce exists. It is sufficient if a persistent, unjustifiable course of conduct on the part of the husband be shown which necessarily renders the life of the wife miserable. Seelye v. Seelye, 45 App. 27; Obrock v. Obrock, 32 App. 149. It is the duty of the husband to provide a home for his wife, and when, as in this case, he takes his wife into the family of another and she is there cursed, abused and ordered out of the house, by one having the control of the house, she is not required to remain there where she will be subject to the abuse and insults which render her miserable. When the father of defendant ordered the complainant out of his house in such a coarse and insulting manner, what could she do but appeal to her hus-

band to take her where she would not be mortified by the feeling that she was unwelcome? Shocked at the brutal treatment she had received at the hands of her father-in-law, she instinctively turned to her husband, and when she found that he did not sympathize with her, but gave his approval of what had been done, it is not to be wondered at that she could no longer bear the nervous strain, and that a friendly unconsciousness intervened to save her from the sting of such inhuman treatment.

It is suggested that the defendant offered to receive the complainant back and live with her. In this connection it is to be noted that he never provided her a home or did anything indicating his good faith in making such offer, and taking all the evidence together we are inclined to think that the proposition to live with his wife was made to meet the exigency of his otherwise hopeless defense to this suit, and with no purpose or preparation to carry it out.

Finding no error in the record, the decree is affirmed.

*Affirmed.*