Augusta Winterberg, Appellee, v. Phillip H. Winterberg, Appellant.

Gen. No. 17,002.

1. HUSBAND AND WIFE—*separate maintenance.* In order to maintain a bill for separate maintenance, a wife need not show statutory grounds for divorce, but it is sufficient if it appears that defendant is persistently and wilfully living separate and apart from her without her fault, and does not furnish her suitable support according to her wants and rights, and within his ability to pay.

2. HUSBAND AND WIFE—*separate maintenance.* The complainant in a bill for separate maintenance or for divorce, or for any other relief in chancery, may charge any number of sufficient grounds for the relief prayed and need only prove one sufficient charge in the bill to obtain the relief sought.

3. HUSBAND AND WIFE—*separate maintenance.* Evidence held not to establish reasonable grounds or justification for defendant's desertion of his wife.

4. HUSBAND AND WIFE—*separate maintenance.* When a husband earns $3,000 a year, an allowance of $100 a month to the wife for herself and four children in separate maintenance is not excessive.

Appeal from the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed. Opinion filed February 19, 1913.

BLUM & BLUM, for appellant.

FELSENTHAL & BECKWITH, for appellee.

MR. PRESIDING JUSTICE DUNCAN delivered the opinion of the court.

Appellee filed her bill for separate maintenance against her husband, Phillip H. Winterberg, charging, in substance, that she was living separate and apart from him without her fault; that he had wilfully deserted her and her four children and had declared it his unalterable intention not to again live with them; that she was an invalid and not able to do much physical work, and was not being properly supported by him; that he had recently demanded that she vacate the eight-room flat in which she and her children lived and upon which he was paying the rent, and separate herself from her children; and that appellant was amply able financially to support his family and that he earns and receives a salary of more than $4,440 per year.

Upon a hearing the court found that the substance of said allegations had been proved and that appellee was entitled to reasonable support and maintenance for herself and her minor children, and decreed that she have the use and custody of the personal property in her possession, and that appellant pay to her the sum of $1,200 per year in semi-monthly instalments of $50, beginning July 15, 1910.

On this appeal our attention is directed pointedly to the fact that appellee's bill also charged cruelty and violence on the part of appellant, and that appellee made no effort to sustain the charges. It is well settled that the complainant in a bill for separate maintenance, or for divorce, or for any other relief in chancery, may charge any number of sufficient grounds for the relief prayed, and that it is only necessary to prove one sufficient charge in the bill to obtain the relief sought.

The evidence for the complainant amply sustains her bill and is, in substance, that she was married to appellant July 21, 1889, and has four children by him; that she was at all times true to him and did everything within her power to make herself satisfactory to him as a wife; that her husband was a traveling salesman, and was away from home about ten months in the year; that prior to August, 1908, appellant deserted her and refused to live with her after that, and insisted that they ought to be divorced; that he assigned as his reason therefor that he was young and had a chance to live happy, and that he could not live happy with her; that after he left her he for awhile paid her $40 per month as rent on the eight-room flat she and her children were living in and $27.50 per week in addition for the support of herself and children; that just prior to filing her bill he refused to pay the rent on their flat and demanded that she abandon it and send their children to a boarding school and that she then moved with her mother and sisters into a house controlled by them; that she is an invalid and has been suffering for six years with pyelonephritis, pus in the kidneys, and is only able to do very light housework, and that her two daughters have been in bad health; that her husband is receiving $3,000 per year as salary in monthly instalments of $250 and ten dollars per day additional for expenses which includes his hotel bills when traveling. The serious condition of her health is proved by

her own testimony and by that of her two physicians and is not questioned. She also testified to the other facts and she is strongly corroborated by her two sisters and her daughter, Lillian. The daughter testified that her father said to her: "I hate you. I never want you to call me your father, and never tell anybody that P. H. Winterberg is your father. In case you are ever happy, never recognize me. But in case of need I will come to you. You know that I would rather live with a rat than I would with your mother, because I hate her as bad as I hate you." Appellant made no denial whatever of the daughter's testimony above quoted. In his letter to his wife of August 4, 1908, written in Birmingham, Ala., he said:

"I have fully come to the conclusion to separate from you, which intention I have for the time we have been married, more so for the last ten years. * * * I have fully made up my mind and nothing in this world could change me. So it is up to you to take the steps and sue me for a divorce by mutual agreement. This can be done in a quiet manner, details talked over. I will support you and the two small children as long as I live; and as for Lillian, she will have to depend on you or herself. I want all my personal belongings, all my family pictures, put in a trunk, and you will send to me as soon as I come to Chicago. * * * Now, Gus, I think you had better not appear —not oppose such separation; as in case you do I will sue you for divorce, and such scandal and notoriety will hurt the girls' future and will set very badly on your family, and for that and your mother's sake you should avoid publicity. As for grounds, I have plenty, some very much reflecting on yourself, so we might as well part in peace. I will never come back to you. * * * Think it over well and talk it over with somebody before refusing. I will pay for the suit in case you bring it."

The appellant was his only witness and the substance of his evidence in chief offered as a defense is that his wife left him some half a dozen times years ago,

and on one occasion she met him as he came home crying and cursing; that she was very nervous and irritable and that they had words about divorce about twelve years ago, but that they lived together after those occurrences; that he was thrown out of his house about fifteen years ago (does not say by whom) and that she called him a liar once when he complained about the meat not being fresh; that he never told his wife or daughter that he was young and would be happy with some one else, and that he wrote the letter of August 4, 1908, because things got to a climax, and that their ideas of cleanliness and the duties of a household wife were different; that after he wrote that letter he went home one time and said to his wife he would stay in the house and try to live with her; and that she told him he could not stay, because George was going to sleep there with their boy and that they occupied the same bed as appellant; that she told him that he could sleep in the hall or on the floor and that that was good enough for him and that then he went down to the Palmer House and never went back to his house again; that he supported his wife, and paid her rent regularly, but admits that he asked her to move and ceased paying the rent and cut down her allowance, claiming it was because he had to cut his expenses to keep within his income. On cross-examination he testified that by a climax he meant "when things for eighteen or nineteen years are disagreeable, that your wife don't give you a clean sheet on your bed, or that your wife is not clean enough to cohabit with, and your wife gives you not eatable stuff to eat and curses you and insults you in front of everybody, and if the husband gets a few friends in the house and they are playing cards she will positively insult those friends and order them out—that is what I call a climax. Things of that kind happened the entire time. Those were the things that induced me to write the letter." He also testified on cross-examination positively that

he did not at the time his wife told him he could not
stay at his house, and never did at any time, tell his
wife that he was ready and willing to go back and
live with her, but testified he was then ready to do
so.

The foregoing evidence of appellant establishes no
justification whatever for appellant's desertion of his
wife, or for his remaining away from her. His evi-
dence is very far from establishing cruelty by her
towards him, and the court was warranted in disre-
garding it altogether. His charges of uncleanliness
and of abuse and insults, if they amount to such, are
not sustained by statement of facts, from which the
court could judge of the truth of such charges. He
merely contents himself with stating his conclusions
that she insulted him and his friends, ordered them
away, and that she was not cleanly, etc. How could
the court say that she was not justified in ordering
his visitors away, if she did so, unless the court knew
the facts and circumstances that caused her to do so?
The court was not furnished with any facts or cir-
cumstances by which to determine whether or not she
was uncleanly. He did not even furnish the court
any evidence of the standard by which appellant
gauged her cleanliness. The evidence was not of a
character to demand replying to by appellee. After
the humiliating letter he wrote his wife, he had no
right to expect that she would be as cordial and as
affectionate to him as she had been, but nevertheless
we find ample evidence in the record to the effect that
she grieved much on account of his desertion of her
and offered, and was willing, to go anywhere and live
with him in any home he might choose, and that he
still persisted at all times that he would never go
back and live with her. The court was fully war-
ranted in the conclusion that his offer on the trial
to live with her was not made in good faith, after his
withering and cruel and unwarranted denunciations

of her, and his repeated declarations that he would not live with her.

The amount allowed appellee for the support of herself and children, at the time she filed her bill, was shown by the evidence to be insufficient, on account of the heavy expenses for physicians and medicines for herself and her daughters, and other heavy household expenses she was required to meet in Chicago, her home. The amount allowed was much less than at first he was paying her. Inasmuch as it was his judgment and the court's judgment that her wants required $100 a month or more for her support, we think the amount allowed was reasonable and not excessive. After paying $1,200 per year for the support of his wife and children, he will have left out of his salary $1,800, with his board and lodging paid out of his expense money. It is not the law that the wife must show statutory grounds for divorce before she can maintain a bill for separate maintenance. It is sufficient if it appears that he is persistently and wilfully living separate and apart from her without her fault, and does not furnish her suitable support, according to her wants and rights, and within his ability to pay. She has made such proof and has shown that her life is miserable, indeed, by his persistent and unjustifiable conduct. It was up to him to prove that he had reasonable grounds for deserting her and her children after her proof of wilful desertion, but he failed to do so. Wahle v. Wahle, 71 Ill. 510; Hunter v. Hunter, 121 Ill. App. 380; Mellanson v. Mellanson, 113 Ill. App. 81.

The decree is affirmed.

*Decree affirmed.*