## JEREMIAH MARSTON *et al.*

*v.*

## SARAH J. BRITTENHAM.

1. ACKNOWLEDGMENT OF DEED—*impeaching by parol testimony.* The uncorroborated testimony of a wife, that she executed a deed of trust upon her separate property in the presence of her husband, not of her own free will, but in consequence of his threats to leave her if she did not, and that she never acknowledged the same, is not sufficient to overcome the officer's certificate of her acknowledgment, and his testimony of the truth of his certificate.

2. MARRIED WOMAN'S—*when set aside for undue influence of her husband.* Where a married woman executed a deed of trust upon her separate property, to secure a debt of her husband, with great reluctance, and after much importunity from the latter, and many threats on his part to leave her if she did not sign it, and for the purpose of preserving her relations with her husband, it was *held*, that it could not be said to have been freely and voluntarily executed; but where neither the trustee nor the person whose debt was thus secured were parties to such coercion, and had no knowledge whatever of it, and she acknowledged to the officer taking the

acknowledgment, separate and apart from her husband, that she executed the same freely, etc., and it appeared that she was well acquainted with its contents, and never made known the facts until after the property was sold, it was *held*, that it could not be then set aside, as that would be to allow her to perpetrate wrong and injustice to other innocent parties.

3. DEED OF TRUST—*personal notice of sale.* Personal notice of the sale of property under a deed of trust is not necessary where the deed itself does not so require. It is sufficient that notice is given as required by the deed.

4. SAME—*whether trustee is guilty of fraud in making sale under.* Where the owner of land which was advertised for sale, procured a friend to attend on the day appointed, to bid off the same for her, and the land was not sold on such day on account of the absence of the trustee, and such friend procured another person to bid for him, and on a second advertisement, such person, acting in behalf of the owner, bid a sum sufficient to pay the debt, and the law partner of the trustee bid a higher sum for his father-in-law, and the trustee refused to strike off the land to any but the highest bidder, but offered to take payment of the debt and stop the sale, and even waited until the agent so acting could telegraph for instructions, and finally struck the land off on the bid of his partner, there being no reply received to the dispatch, it was *held*, that the sale could not be set aside on the ground of fraud or collusion on the part of the trustee, it appearing that he had no interest whatever in the purchase.

APPEAL from the Circuit Court of DeWitt county; the Hon. THOMAS F. TIPTON, Judge, presiding.

This was a bill in chancery, by Sarah J. Brittenham against Jeremiah Marston, Daniel K. Tenney, John J. McClellan, John V. Farwell, Charles B. Farwell, Simon Farwell, Clifton H. Moore and Vespasian Warner. The facts of the case and object of the bill are stated in the opinion of the court.

Messrs. MOORE & WARNER, for the appellants.

Messrs LODGE & HUSTON, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The complainant below, and appellee here, asks that a certain deed of trust, purporting to have been executed by herself and her then husband, John A. Brittenham, on lands in

DeWitt county, which were her separate property, be set aside, or that she be allowed to redeem from the sale had thereunder.

The deed of trust purports, on its face, to have been executed on the 10th day of March, 1870, by complainant and her husband to John J. McClellan, conveying the lands described therein, in trust, to secure the payment of a promissory note of that date for $2407.33, given by them to Farwell & Co., and payable in eight months, with interest at the rate of ten per cent per annum. Power is given the trustee, on non-payment of the note, to sell and convey the lands, after advertising the sale for thirty days in some newspaper published in DeWitt county.

The fact is undisputed, that the original indebtedness for which the note was given was contracted by the husband of complainant, in his own business, and that her lands were not otherwise liable for its payment than by virtue of the deed of trust.

The grounds upon which relief is claimed, as stated in the bill, are three :

1st. That complainant did not acknowledge the deed before an officer authorized by law to take acknowledgments of such instruments.

2d. That McClellan, the trustee, and John A. Brittenham, the husband of complainant, colluded together and induced complainant to sign the deed by fraudulent representations and the undue influence of her said husband.

3d. That McClellan, the trustee, colluded with Marston, the purchaser at the sale, and Tenney, his agent, and fraudulently withheld from complainant knowledge of the time of sale, and sold the lands at a ruinous sacrifice.

The decree of the court below was in favor of the complainant upon the last two grounds. It will, however, be necessary for us, in reviewing the record, to notice separately each of the grounds claimed for relief, for if either of them is well founded the decree must be affirmed.

Complainant swears that she signed the deed in the presence of her husband, in their store, but that no one else was present, and that she never acknowledged it. There is, so far as we have been enabled to discover from the record, no other evidence tending to corroborate her on this point.

Appended to the deed is the certificate of Alonzo T. Pipher, a notary public in Piatt county, showing that complainant and her husband appeared before him and properly acknowledged the deed on the 3d day of May, 1870. In addition to this, his deposition was taken, and he swears to the truth of what is stated in his certificate.

We may, with much propriety, apply here what was said in *Monroe* v. *Poorman et al.* 62 Ill. 526: "If the testimony of a wife, who may or may not become a widow, is to prevail over her own deliberate act, done knowingly, and over the testimony of a disinterested officer taking the acknowledgment, there will be but frail security to titles; for, if such evidence is to prevail in one case, it must prevail in all cases; and whenever a woman can be found, and they are numerous, to swear against her own act, there is really no security in titles derived in whole or in part from them." To impeach such a certificate, the evidence should do more than produce a mere preponderance against its integrity in the balancing of probabilities—it should, by its completeness and reliable character, fully and clearly satisfy the court that the certificate is untrue and fraudulent. The evidence before us on this point falls short of producing such an effect upon our minds.

Upon the second point, we fail to find sufficient evidence to satisfy us that there was any collusion between the trustee and the husband of complainant, for the purpose of improperly inducing her to sign the deed. McClellan was not present when the deed was signed. According to complainant's own version, the deed was drawn up and ready to be signed, and presented to her two months before she signed it; but, she refusing, it remained in her house until she finally signed

it. It is not shown that McClellan even knew that she was reluctant to sign it, but, on the contrary, the only evidence in this respect is, that he was informed she was willing to sign it. This he swears, and it is not contradicted. She swears, indeed, that McClellan told her "they did not intend to press for payment—it was only security they wanted."

In the view we have taken of the evidence on the point of the acknowledgment of the deed, it follows that her claim that she did not know the contents of the deed when she executed it, is not sustained by the evidence, and we must assume that she acknowledged to the officer that she was acquainted with its contents. Being acquainted with its contents, she knew that the trustee was authorized to sell on the non-payment of the note at its maturity. She knew when it matured, and is legally chargeable with knowledge that the rights of Farwell & Co. and the duties of the trustee were fixed by the terms of the deed; and it is, therefore, impossible that the remark she attributes to McClellan could, in a legal sense, have affected her conduct. Indeed, as a matter of fact, we can scarcely doubt that, when she signed the deed, she fully and correctly realized the jeopardy in which it placed her property. She says she refused, for a couple of months, to sign it, and on several nights she and her husband sat up all night contending about it. That all this could have happened in regard to an instrument about the contents of which she had no knowledge, and which she supposed was to have only such obligatory force as was to be imputed from the remarks attributed to McClellan, is so extraordinary that it fails to enlist our credulity. Moreover, McClellan, who testifies with seeming candor and fairness, and who has much less interest in the event of the suit than has complainant, positively denies that he ever talked with complainant about the deed, or that he made any promise whatever to her.

The evidence is full to the point that complainant signed the deed with great reluctance, and that she did so only after much importunity from her husband, and many threats on his

part to leave her if she did not sign it; and if the evidence connected McClellan and Farwell & Co. with this conduct of his, and she had made application within a reasonable time to have the deed canceled for that cause, we should not hesitate in holding that she was entitled to do so.

A deed executed by a wife for the sole purpose of preserving her marital relations with her husband and peace in her home, can not be said to be freely and voluntarily executed. But the law, in giving the wife the same dominion over her separate property that belongs to a *feme sole*, intends that it shall be used as a means of protection, and not for the purpose of perpetrating wrong and injustice against others. She has within her reach every legal means for protecting her rights which is possessed by all absolute owners of property. When this deed was acknowledged, it was necessary that she should be examined separately and apart from her husband, and if she was then acting under any kind of duress or coercion in signing the deed, it was her duty to state it, and the duty of the officer to refuse to certify to her acknowledgment. If, however, she was under such great and continuing coercion that she still felt compelled to withhold the truth from the officer, and state to him a falsehood, it was certainly her duty to make known the fact that her acknowledgment was involuntary and that she designed repudiating the deed, as soon as she felt relieved from this coercion.

Complainant does not seem to have made any effort to notify either McClellan or Farwell & Co. that she had been coerced into signing the deed, and there is no evidence that they or either of them participated in, or had knowledge of the conduct of her husband previous to the sale under the the deed. She was informed when the sale was first advertised to be made, and at once set about taking such steps as she seems to have thought essential to a protection of her rights. It is not claimed that she was then acting under the controling influence of her husband, and yet, instead of seeking to enjoin the sale and have the deed canceled because it

had not been voluntarily executed, she procured a friend to attend the sale, bid the property off and take a deed to himself from the trustee, with the understanding that he was to hold the title until such time as she could redeem.

The parties in interest and the public, instead of being informed that the deed was void, and, of consequence, that any title derived at the sale under it must be a nullity, were thus notified that she regarded it as obligatory, and that the title to be derived through the trustee would be unobjectionable. If her deed was obtained by coercion, and was void, why did she have her friend attend the sale to obtain title to the property under it? Why not then rely upon the invalidity of the deed?

But it has been held by respectable authority that, although a married woman may be induced to execute a deed to her separate property by the undue influence of her husband, yet, if the grantee did not know of or participate in the fraud practiced upon her, she is bound by the deed. *White* v. *Graves,* 107 Mass. 325; *Somes* v. *Brewer,* 2 Pickering, 184; see, also, *Spurgin* v. *Traub et al.* 65 Ill. 171.

There is much stronger reason that she should be so bound, where not only the grantee is not shown to have known of or participated in the fraud, but she, by her own subsequent voluntary acts, gives the public to understand that the deed is valid, and good title may be derived under it.

The questions decided by the court in *Swift et al.* v. *Castle,* 23 Ill. 209, are not involved in the present case, and the remarks of CATON, C. J., in his separate opinion upon the peculiar facts in that case, however applicable there, can have no bearing here. They commit the court to no legal proposition, and were merely added as make-weight to the opinion previously announced.

The charge that McClellan colluded with Marston to defraud complainant, and that he fraudulently withheld from complainant knowledge of the time of sale, is not sustained by the evidence. The deed did not require that complainant

should be notified personally of the time of sale. It provided simply that notice of the sale should be given by a specified newspaper publication, and no claim is made that such notice was not given; and although complainant, in her direct examination, says that McClellan said he would not advertise the land without giving her notice, and that she relied upon him, still, on cross-examination, she shows that in this she was simply stating what she had been informed by her husband. She says: "Never had a conversation with McClellan or John V. Farwell about this. No one promised to give me notice of the sale, only what my husband said about that." And this is in accord with the evidence of McClellan, who denies that he ever had any conversation with complainant in regard to the deed or sale, or that he ever made her any promises.

As before observed, complainant procured a friend, Mr. Gridley, to attend at the time the sale was first advertised to take place, for the purpose of bidding off the property and holding the title for her until she could redeem. Mr. Gridley attended at Clinton, at the proper time for that purpose, but the sale did not take place, in consequence of the failure of McClellan, the trustee, to be present. Before leaving Clinton, Mr. Gridley made arrangements with Mr. C. H. Moore to bid on the lands, should the trustee arrive and offer the lands for sale after his departure. On his way to his home in Bloomington, Mr. Gridley met McClellan at Wapella, and there informed him that complainant had procured him to bid off the lands, etc.; that he had been to Clinton for that purpose; that he was prepared to bid them off for a sufficient amount to pay the trust deed, and requested McClellan to return to Clinton and sell them, as he desired to avoid two trips. McClellan claimed the hour was past, and the lands could not be properly sold on that day.

When the sale was subsequently made, Gridley had no actual notice thereof and was not present at the sale. Moore, however, was present, and bid $3000, telling McClellan at the

time his bid was for the complainant. Tenney then, as the agent of Marston, bid $3050—some $230 more than the amount due on the deed of trust; and this being the highest bid, the lands were struck off to him. Tenney was the law partner of McClellan and the son-in-law of Marston.

The proof shows that McClellan offered to delay the sale until Moore could telegraph Gridley and ascertain his wishes in regard to the sale, Moore being uncertain how to act in the matter. He says that he had no authority to act for complainant or her husband, and he was not confident that Gridley at that time wished him to bid for him. He accordingly telegraphed Gridley for instructions, but received no reply until in the evening, after the sale was over, when Gridley telegraphed him not to bid for him.

McClellan says he offered to strike the lands off to Moore for the amount due on the trust deed, if Moore would take the responsibility of saying that he was authorized to act for complainant; but Moore could not do so, and he says he was unwilling to risk more than $3000 for the lands, incumbered, as they were, by a prior deed of trust to the extent of some $6000, without an assurance that the property would be taken off his hands. He further says: "McClellan offered to take the amount due on the deed of trust, and stop the sale, but said he could not strike the land off to me unless my bid was the best."

In this there is no evidence of unfairness, or fraud, or violated pledges on the part of the trustee. He was entirely correct in saying, if the lands went to sale they must be sold to the highest bidder. Suppose they had, notwithstanding Tenney's bid, been struck of to Moore for $3000; Gridley's dispatch repudiated Moore's authority to act for him, and he had no authority from any other source to bind the complainant. She might, therefore, have repudiated the entire sale. It was her misfortune not to have made some permanent arrangement by which her rights would have been more certainly

looked after, but this can not affect Marston, in the absence of bad faith on his part.

The fact that Tenney was the law partner of McClellan, did not of itself disqualify him from being a bidder at the sale for his father-in-law. All idea that Tenney's bid was for the benefit of McClellan is completely negatived by the evidence of McClellan, Tenney and Marston. If they are to be believed, and we know of no reason why, standing, as they do, uncontradicted, they shall not be, the purchase by Tenney was for Marston, and was made in good faith, as a speculation, in which no one else had any interest.

The evidence shows that the lands were, in the opinion of some of the witnesses, fairly worth more, by a considerable amount, than that for which they were sold. This discrepancy, however, taking into consideration that the purchaser was bound to redeem from the prior deed of trust—amounting to some $6000—was not so great as, in itself, to justify setting aside the sale.

Complainant has suffered a very serious misfortune in losing her lands, and could we clearly see any reasonable way, consistent with our understanding of the law applicable to the case, by which we could relieve her, we would most cheerfully do so, but we do not, and it is not allowable that our sympathies shall have any consideration in the case.

The decree of the court below will be reversed and the cause remanded.

*Decree reversed.*

Mr. JUSTICE SCOTT, dissenting.