### Florence R. H. Wasson, Appellee, v. Don U. Wasson, Appellant.

### Gen. No. 29,318.

1. HUSBAND AND WIFE—*necessity for wife to prove freedom from fault in separate maintenance proceedings.* A wife seeking separate maintenance must prove by a preponderance of the evidence that the separation was not due to her fault.

2. HUSBAND AND WIFE—*when decree for separate maintenance contrary to evidence.* A decree for separate maintenance was not justified where the evidence showed that plaintiff and her husband frequently quarreled because of her association with another man and that he had left home on account of such association and returned upon complainant promising to discontinue it; that she had thrown dishes at defendant and once had bitten his thumb so that it needed treatment; and that, when he finally left her,

he had told her she must decide between the other man and him and that she had told defendant to go.

3. HUSBAND AND WIFE—*immateriality of husband's ex post facto adultery in separate maintenance proceedings.* Evidence of adultery of a husband subsequent to the separation is immaterial on the question of fault in the separation in a suit for separate maintenance.

Appeal by defendant from the Superior Court of Cook county; the Hon. CHARLES A. McDONALD, Judge, presiding. Heard in the third division of this court for the first district at the March term, 1924. Reversed and remanded. Opinion filed April 29, 1925.

ERNEST W. CLARK, for appellant.

CHARLES E. ERBSTEIN and JOHN B. FRUCHTL, for appellee.

MR. JUSTICE TAYLOR delivered the opinion of the court.

This is a bill for separate maintenance filed by the complainant, Florence R. H. Wasson against her husband, Don U. Wasson. It charges the husband with cruelty, desertion and adultery. The defendant answered, denying the charges, and alleged that his wife associated with other men so as to humiliate and disgrace him.

On January 26, 1921, the court found that the husband had an income of $5,000 and ordered him to pay his wife $25 a week from January 29, 1921, until the further order of the court. On May 18, 1921, the husband was ordered to show cause why he should not be adjudged in contempt of court. On May 27, 1921, there was an order of reference to a master to take proofs as to the property and income of both husband and wife. Pursuant to that order, the master made a report.

On October 14, 1921, the court entered an order that the husband pay his wife $900 temporary alimony, which had accrued under the prior order of

the court, and $300 solicitor's fees; and terminating the former order for temporary alimony.

On November 9, 1921, the court found that there was due her $1,150, and entered judgment therefor; and ordered the defendant to show cause by November 18, why he should not be punished for contempt. On November 21, a writ of *ne exeat* was issued, and he was arrested. A rule for him to show cause was entered and continued until February, 1922.

On February 17, 1922, an order was entered reserving a decision on the application for temporary alimony until the trial of the cause, which was set for March 27, 1922. The defendant, having obtained leave, filed a cross-bill alleging various acts of cruelty.

There was a reference to a master to determine the amount to be allowed the complainant for her solicitor's fees, and a report recommending that $1,250 be allowed for those rendered between April 21, 1921, and October 25, 1922.

On May 16, 1922, there was a trial upon the merits before the chancellor, and at the close of the evidence a decree was entered. That decree found that the court had jurisdiction, and that the complainant and defendant were married on June 12, 1902; that they lived together until about May 1, 1920; that during that time the complainant conducted herself as a true and chaste wife; that no children were born; that on May 1, 1920, the defendant, without reasonable cause, wilfully deserted her, and has persisted in his desertion; that at the time of the filing of her bill, she was living separate and apart from him without fault on her part; that on or about September 3, 1921, at Davenport, Iowa, he committed adultery with one Mrs. Harry Clies; that the allegations of the cross-bill were not sustained by the evidence. The decree further found that the complainant draws an income from her interest in certain real estate; that in 1920, she received therefrom the sum of $2,732; that from

January 1, 1921, to June 2, 1921, she received the sum of $1,650; that she paid $65 a month for rent for the apartment she occupied; that the defendant derives an income of $50 a week from certain stock he owns in the Duffy Manufacturing Company; that during 1920 he drew from that company $11,000, $3,000 of that being in repayment of money loaned to the company; that he had, in 1920, after paying his traveling expenses, an income of $6,300; that from January 21, 1921, to April 30, 1921, he drew from that company $3,846.99, included in which was $2,461.45 for traveling expenses, which left a net income of $623.54; that he owns $2,500 worth of stock in the Brady Foundry Company, for which he had given his note for an equivalent amount. The decree further found that the complainant employed counsel who rendered services to the value of $1,250; that $300 thereof has been paid. The decree ordered that the cross-bill be dismissed for want of equity. It also ordered that the defendant pay to her $950, balance due on solicitor's fees, and to pay to her $2,350 (afterwards changed to $2,100) for separate maintenance and support from February 17, 1922, to the date of the entry of the decree. It provided that the question as to permanent alimony and maintenance money be reserved for future determination.

This appeal is from that decree.

It is contended that the evidence fails to show that the complainant was living separate and apart from her husband without her fault. The law requires that she shall prove not only that she had sufficient justification for living separate and apart from her husband, but in addition that it was without her fault. *Johnson v. Johnson,* 125 Ill. 510; *Raab v. Raab,* 150 Ill. App. 554. In the latter case, the court said:

"The statute, being in derogation of the common law, must be strictly construed, and nothing by way of intendment will be presumed. The wife seeking separate maintenance must by proof, supplemented

with a finding, demonstrate that her case is within the statute, and that she is living separate and apart from her husband without her fault, before the court has jurisdiction to decree a separate maintenance.''

In the recent case of *Hoffman v. Hoffman*, 316 Ill. 204, the court said: ''In order to support a decree for separate maintenance it is necessary that the complainant allege and prove first that she has good cause for living separate and apart from her husband, and second, that such living apart was without fault on her part.'' Citing *Decker v. Decker*, 279 Ill. 300, and the *Johnson* case, supra. It is her duty to prove by a preponderance of the evidence that the separation was not owing to her fault. It is not enough to merely prove that he left. She must prove that she was not to blame.

The evidence shows that for several years prior to their separation they had slept in separate rooms, and that for over two years immediately prior to their separation she had refused to cohabit with her husband. Also, that she spent considerable time with one Hinkson, her relations with whom became a considerable source of trouble between both husband and wife. The husband testified that on May 1 he gave her two days to decide whether she would give up her relations with Hinkson, and that she told him, her husband, to go, that she would be glad when he was gone. He testified that he talked to her at least fifty times about the man Hinkson, and that he was not a fit man for her to associate with, that the neighbors were talking about it; that on two occasions he left home on account of him; that in September, 1919, he left home for a couple of weeks on account of Hinkson; that she telephoned him to come back, stating that Hinkson had left town; that after he returned he saw them together; that a similar situation arose about six months later, when she again said she would give the man up, and for him, her husband, to come home; that again, afterwards, he saw them

together; that while they were living together, she was out practically every night until 11 to 1 o'clock, for fourteen consecutive months; that she never went anywhere with him, the husband; that she repeatedly struck him, and about April 15, before he finally left, she bit one of his thumbs so that he had to have it treated, and threw dishes and glasses at him. One Svea Anderson, a maid, testified that the complainant went out about every night, but not with her husband; that she heard them quarreling and saw the complainant bite her husband's thumb; that when the defendant was packing his trunk, he said to his wife that she would have to decide between that man and him; that the complainant said it was all right, for her husband to pack up and go; that about two weeks after he left, the complainant said, "Svea, if you were in my place would you give up this man if Mr. Wasson objected to him?" One Clara Taft, a maid, testified that in June, 1919, she saw the complainant, when in the dining room, throw a glass at her husband; that they had been quarreling; that they quarreled about once a week. One Helen Beatty, who worked for the complainant and the defendant, testified that in December, 1918, she saw Hinkson there twice, once about noon, and also in the evening of December 20 or 21, 1918, when no one else was there but the two. Several other witnesses testified to seeing her and Hinkson together. One Fields said he had seen them together three or four times, once on Grand Boulevard, after dinner, sometime in September, 1919, and twice in Jackson Park, each time in the evening.

There is practically no contradictory evidence, save that given by the complainant, and much that is against her she has not specifically denied. Reading all the evidence, it seems unreasonable to conclude that she has sufficiently proved that she was without fault.

Evidence was introduced that on September 4, 1921, the defendant committed adultery at Davenport, Iowa, and also at Chicago, on April 4, 1922, but those offenses were *ex post facto,* and could have no bearing on the question of whether in May, 1920, when the complainant and defendant separated she was without fault. In our judgment the decree that the complainant was living separate and apart from the defendant without fault on her part is manifestly against the weight of the evidence.

The decree will be reversed and the cause remanded.

*Reversed and remanded.*

O'CONNOR, P. J., and THOMSON J., concur.