Ruth Elizabeth Short, Defendant in Error, v. Harold Short, Plaintiff in Error.

Gen. No. 8,595.

term, 1931. Heard in this court at the October Opinion filed February 1, 1932.

HAROLD F. TRAPP, for plaintiff in error.

PETER MURPHY and E. C. MILLS, for defendant in error.

MR. JUSTICE SHURTLEFF delivered the opinion of the court.

This cause brings before this court on writ of error the decree of the circuit court of Logan county finding that the complainant, defendant in error, at the time of the filing of the bill of complaint, was living separate and apart from her husband, plaintiff in error, without fault on her part and directing the payment of the sum of $10 a month for her maintenance. Defendant in error filed her bill for separate maintenance August 7, 1929, she being then 18 years of age, against plaintiff in error, who was then 19 years of age. The court at the September term, 1930, appointed a guardian *ad litem* for plaintiff in error, who filed his answer as such guardian. The guardian *ad litem* prayed postponement of the case until the January term, 1931, at which time plaintiff in error would be 21 years of age and could for himself elect whether to affirm or disaffirm the alleged marriage. The court denied the motion. The guardian *ad litem* thereupon filed his cross-

bill alleging that the marriage was procured by duress and coercion in that on the 27th of February, 1928, the father of defendant in error came with a deputy sheriff of Logan county to the home of plaintiff in error and represented that defendant in error was pregnant with child. He charged the plaintiff in error with being the father of said child and represented to plaintiff in error that unless he married the defendant in error he, the plaintiff in error, would be prosecuted for rape and sent to the penitentiary for life; that the plaintiff in error was not the cause of the pregnancy of the defendant in error, but that he was young, inexperienced and put in fear by reason of the nature of the charge and influenced by the threats and representations of force and entered into said marriage immediately on the same day; that thereafter on the 13th day of June, 1928, a fully matured child was born to said Ruth Elizabeth Short which child is still living; that plaintiff in error, knowing the child was not his child, refused to live with the defendant in error and has never lived with her since said time; that the defendant in error became 16 years of age after the birth of said child; that he never lived with her since before the birth of said child; that he is a minor under the age of 21 years and does not care to ratify or confirm said marriage; that by reason of the misrepresentation and coercion brought upon him, the marriage was voidable; that by reason of the age of the said Ruth Elizabeth Short at the time of said pretended marriage the marriage was void, and he desires to disaffirm the same.

The court sustained a demurrer to the cross-bill and the plaintiff in error elected to stand by said cross-bill. The plaintiff in error was 18 years of age on January 15, 1928; defendant in error was 16 years of age May 12, 1928; the marriage took place February 27, 1928.

Plaintiff in error contends that the proofs show that after said marriage the defendant in error and plaintiff in error lived upon the farm of defendant in error's father, which defendant in error operated himself; that they never cohabited as husband and wife after the latter part of April, 1928; that during the latter part of May, 1928, a nurse waited upon defendant in error and until the child was born, and thereafter until June 24, 1928; that plaintiff in error occupied a different room in the home after the latter part of April, 1928, and was still maintaining the defendant in error in their home, on June 24, 1928, at which time defendant in error's mother was staying with her; that on said day the nurse was discharged and early in the morning the defendant in error's father came in his car and took defendant in error, her child and her mother to the father's home where she has resided since that time. There was no proof that plaintiff in error had ever injured or mistreated defendant in error in any way, but on the contrary the proof shows that he provided for her and supported her and continued to operate the farm until after she deserted him. There was no proof to sustain the charge that defendant in error lived separate and apart from her husband without fault on her part.

The only contradiction to the testimony as given was by defendant in error. She states that plaintiff in error was at the home until after the child was born; that he was not there any time after that; that he came back twice a day to do his chores; as far as defendant in error knows, after June 24, 1928, he stayed with his parents about a mile and a half west of Emden. Plaintiff in error contributed $60 to the support of his wife after the separation.

The plaintiff in error upon the trial offered to prove that he had not had sexual intercourse with the defendant in error at any time prior to said marriage, and that he was not and could not be the father of said

child; that he was but 18 years of age; that on February 27, 1928, when defendant in error's father in her behalf came with the sheriff of Logan county, early in the morning to the defendant in error's home and stated that he must marry her or be prosecuted for rape and sent to the penitentiary for life, he was very much intimidated; that he was taken to the courthouse in Lincoln where said threats were repeated; that he was told by the sheriff that he would have to marry the defendant in error, but that he need not live with her; that he was inexperienced, had no attorney, and that by reason of fear and intimidation and the threats and representations made to him he was induced to enter into the marriage. He also offered to prove that at no time when the child must have been begotten was he with or in the presence of the defendant in error. He further offered to prove by his father and his mother the said threats and representations so made by the sheriff and defendant in error's father, all of which offers the court refused to admit. Plaintiff in error also offered to prove by his own testimony that he was never in the company of the defendant in error except one evening, September 23, 1927, when he drove from Emden to her home, a distance of about two and one-half miles, to get some spoons for a Sunday school picnic. This date was such that the child born on the 13th day of June, 1928, fully developed with finger nails and hair, could not in the course of nature have been begotten by the plaintiff in error. Plaintiff in error offered to prove that he never did have sexual intercourse with defendant in error and that said child was not and could not be his child. He also offered to prove that defendant in error told him that on the night of the Hartsburg Homecoming, September 15, 1927, she had driven in the car of John Zimmer with John Zimmer and Pauline Brandt and with a young man named Coogan; that Zimmer and Miss Brandt had gotten out of the car, walked down the road and

left her and Coogan in the car; that Coogan there had sexual intercourse with her.

All of these offers to prove were denied by the court, to which rulings of the court refusing to permit him to make proof of the coercion, duress and misrepresentation by which the marriage of plaintiff in error was procured, the plaintiff in error duly excepted.

The court dismissed the plaintiff in error's cross-bill for want of equity and sustained defendant in error's bill for separate maintenance. A decree was granted which is brought to this court on a writ of error for review.

It is contended by plaintiff in error that there is no testimony in the record fairly tending to support the finding and decree, that defendant in error, at the time of filing her bill, was living separate and apart from plaintiff in error, without her fault. Separate maintenance is a statutory remedy, in derogation of the common law, and the court is without jurisdiction to decree it except where the proof brings the complainant strictly within the law, nothing by way of intendment being presumed. (*Raab v. Raab,* 150 Ill. App. 554, 558; *Johnson v. Johnson,* 125 Ill. 510, 515; *Wasson v. Wasson,* 236 Ill. App. 505, 508.)

Before the court can decree separate maintenance to the wife, the preponderance of the evidence must show, first, that the conduct of the husband is such as directly to endanger the life, person or health of the wife, or, second, that the husband pursues a persistent, unjustifiable and wrongful course of conduct toward the wife, which will necessarily and inevitably render her life miserable and living with him as his wife, unendurable. (*Johnson v. Johnson, supra; Raab v. Raab, supra; Wasson v. Wasson, supra; French v. French,* 302 Ill. 152, 161.)

But the more serious question in this case, aside from the status of the parties under the laws of this

State, is the question of the court's action on plaintiff in error's cross-bill, the question of duress and the use of threats to compel plaintiff in error to enter into the marriage. There is no question about the facts charged in the cross-bill and, by the demurrer, admitted to be true. Plaintiff in error, if he had intercourse with defendant in error, was guilty of a felony and subject to confinement in the penitentiary.

In *Schwartz v. Schwartz,* 29 Ill. App. 516, 526, duress is defined: "In 2 Greenl. Ev., Sec. 301, it is said: 'Duress, in its most enlarged sense, is defined as that degree of severity, either threatened and impending or actually inflicted, which is sufficient to overcome the mind and will of a person of ordinary firmness.' 'The plea of duress of imprisonment is supported by any evidence that the party was unlawfully restrained of his liberty until he would execute the instrument.'

"In 6 Am. & Eng. Encyclopedia of Law, 57, duress is defined thus: 'Duress exists where one, by the unlawful act of another, is induced to make a contract or perform some act under circumstances which deprive him of his free will.'

"The Supreme Court of Michigan, in *Feller v. Green,* 26 Mich. 69, have said: 'To make out the defense of duress of imprisonment, it must appear that the party's action has been influenced by the restraint; if he has only paid or secured a just debt while held in custody, the transaction is not to be avoided unless he did so because of the custody. The question is one of fact, whether he was coerced or acted willingly, and the conclusion of coercion is not a necessary and unavoidable one from the fact of unlawful restraint.' *Taylor v. Cottrell,* 16 Ill. 93; *Ford v. Cratty,* 52 Ill. 313."

In *Taylor v. Cottrell,* 16 Ill. 93, 95, duress is described: "In the case of *Thompson v. Lockwood,* 15 John. 256, the imprisonment was unlawful, and the

bond being taken by a public officer, *colore officii,* was void for want of right or authority in the officer, although worded according to the statutory form. Being contrary to the policy of the law, it was adjudged void as to the surety also, and not good as a voluntary bond at common law.

"The chief distinction under the rule seems to be between a lawful and unlawful imprisonment. The latter shall be intended a duress to avoid a bond given for enlargement. 3 Bacon's Abridg., title 'Duress,' 252; 4 Harrington, 311.

"But where the imprisonment is lawful, the party alleging the duress, must show how it is made to operate upon and influence his mind by constraint to assent to, and do acts contrary to right and justice. 3 Bacon's Abridg., title 'Duress,' 252–5; 4 Harrington, 311. And this may be done by false, malicious, and groundless demand, or charge of crime for which the party may be arrested, and forced to execute the instrument to procure his release, as in the case of *Watkins v. Baird,* 6 Mass. 506; 3 Bacon's Abridg., title 'Duress,' 253."

In *Schommer v. Farwell,* 56 Ill. 542, 545, it is held: "It is evident that the sole purpose of Keefe in this prosecution was, by the agencies of the criminal law, to secure what he believed to be a debt due to his employers. The police officers seem to have paid no attention to the command of the magistrate's warrant, or to the rights of the prisoner, but to have used their official power merely in obedience to the wishes of Keefe, and to enable him to accomplish his private purpose. We presume Keefe believed Schommer's son had been guilty of embezzlement, and that the father was privy to it, but this did not justify him in prolonging the imprisonment of Schommer a single hour, merely for the purpose of compelling the execution of this mortgage, and if it was executed by Schommer as

the only means of speedily terminating his confinement, and after being refused a hearing before the magistrate, then it was executed under duress and is void. That it was so executed is fairly to be inferred from the testimony.''

And it is held in *Heaps v. Dunham,* 95 Ill. 583, 588: ''Imprisonment, when lawful, is by no legal intendment an abridgment of the free and voluntary volition of the mind in the management of business transactions. It is, therefore, not sufficient to establish duress to show an imprisonment. It is necessary to show an unlawful imprisonment or abuse of or oppression under lawful process or legal detention. *Taylor v. Cottrell,* 16 Ill. 93.'' In the last case the court held void a note in the excess above $500, the amount that might have been recovered in a bastardy suit.

In the case at bar there was no legal prosecution of plaintiff in error or any warrant for his arrest. Harry McCormick, father of defendant in error, and the sheriff took plaintiff in error into custody and informed him that he would be convicted of rape and sent to the penitentiary for life. They did not permit him to have counsel or advice or the assistance of an attorney, without which no court undertakes to adjudicate the rights of a minor. They tried and convicted plaintiff in error and fixed the penalty. Plaintiff in error at this time told McCormick and the sheriff that he was not the father of the child and had not had intercourse with the girl, but in their view of the matter someone had to marry defendant in error and they held their court in session until plaintiff in error succumbed, according to the proofs offered and the cross-bill. He was taken before the State's attorney, and told by him that he would have to marry defendant in error or be prosecuted for rape. The sheriff informed him that he would have to marry defendant in error, but would not have to live with

her. All of these matters are questions of fact upon which plaintiff in error was and is entitled to a trial by jury.

Defendant in error's only answer to the charge of duress and threats is that the threats were made, not by defendant in error, but by a third person, and cites *Marston v. Brittenham,* 76 Ill. 611; *Ladew v. Paine,* 82 Ill. 221, and *Schwartz v. Schwartz, supra.* It is true that there must be some privity or relationship between the party coerced and the party benefiting thereby. In *Marston v. Brittenham, supra,* the cause arose between a wife, acknowledging with her husband a trust deed covering her own property, and the party who was the holder of the indebtedness. The wife fully acknowledged the instrument, separate and apart from her husband, but afterward claimed that she was coerced by her husband. It was held that her claim would not bind a third party. *Ladew v. Paine,* is identical in facts with *Marston v. Brittenham, supra.* In *Schwartz v. Schwartz, supra,* it would appear that all of the parties were adults, and that appellant was persuaded to do nothing except what he had contracted to do and very cheerfully was willing to do. We cannot hold that the same rule applies to a child, under age, also under the age of consent, under the direct control of her father, under his will and possibly under the influence of the same coercion. She is not in a position to claim rights in a contract into which, under the law, she had no right to enter.

In the cross-bill plaintiff in error sought to show that the child was not his child. Counsel for defendant in error contend that the declaration of the father or mother cannot be admitted to bastardize the issue born after marriage, citing *Godfrey v. Rolland,* 7 Am. Cas. 993; Wharton on Evidence, sections 607, 608 and 609, and Encl. of Evidence, vol. 2, page 240. There is no doubt about this rule in a proper case. But does it

apply in this case? There seems to be no decided case in our own State upon this subject; at least, no case is cited by either side.

In *Gard v. Gard,* 204 Mich. 255, 169 N. W. 908, found in American Law Reports vol. 11, page 923, the court held: ''A man is entitled to annulment of a marriage into which he enters because of the fraudulent representations by the woman that the child of which she is pregnant is his, although she had informed him that she had sustained illicit relations with another,'' and a copious note follows upon the subject at page 931.

In *Jackson v. Ruby,* 115 Atl. 90, found in American Law Reports vol. 19, page 77, the court held: ''A marriage will be annulled if induced by fraudulent representations that the man is the father of the woman's unborn child, although he had sustained illicit relations with her, and took no precautions to ascertain the truth of her assertion.'' There is a note to this case, page 80, stating ''Supplementing annotation in 11 A. L. R. 931.

''The reported case (*Jackson v. Ruby, ante,* 77) is the first one upon the subject which has been reported since the publication of the former annotation. It is shown in the former note that while the tendency of the earlier cases was to refuse relief in such cases, the later ones show a very strong tendency in the opposite direction, and, in the absence of special circumstances, grant the relief. The Maine court now adds the weight of its authority to that side of the controversy.''

In neither case do we find any citation of Illinois authority, and therefore we presume the question has not been passed upon in this State.

It is contended by defendant in error that plaintiff in error ratified the marriage by living with her after she arrived at the age of consent. Plaintiff in error testified he did not live or cohabit with defendant in error after she became 16 years of age, but states that

he left her in the latter part of April, 1928. This is a question of fact to be established upon another trial. The testimony offered to establish the right of separate maintenance was meager, if sufficient, but we do feel that it is necessary to pass upon it until the matters in the cross-bill are out of the way. In the opinion of this court, the circuit court of Logan county erred in sustaining the demurrer to the cross-bill. The cross-bill should have been sustained both upon the question of threats, coercion and duress that induced plaintiff in error to enter into the marriage, as charged in the bill, as well as the allegation of fraudulent representations that the child was the child of plaintiff in error, as charged, and as to any other rights that plaintiff in error may have under his cross-bill.

Little light is thrown upon an analysis of this case by the various decisions of the Appellate Courts of the State, since the amendment of the Rape Act in 1905, and the provision in that act as to a "legal marriage" not yet having been determined.

For the reasons stated, the decree of the circuit court of Logan county is reversed and the cause remanded to that court for further proceedings, in accordance with the views expressed in this opinion.

*Reversed and remanded.*